VALENTINE-CLARK CORPORATION, PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 101352.   Promulgated March 31, 1942.

*Hayner N. Larson, Esq.*, for the petitioner.
*Jonas Smith, Esq.*, for the respondent.

824

826

OPINION.

TURNER: The question here is whether in determining undistributed net income for the purpose of computing the surtax on undistributed profits the petitioner is entitled to a credit under section 26 (c) (1) of the Revenue Act of 1936. In that section it is provided that a credit shall be allowed in "An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends." With the consent of the bank and under the provisions of the contract of November 18, 1935, the petitioner made certain distributions to its stockholders and to Sperry, its manager, and has claimed credit under section 26 (c) (1) in respect of profits not distributed, on the ground that it could not have distributed any further sums as dividends during the taxable years here involved without violating the provisions of the said contract. Holding that the contract did not prohibit the payment of further dividends, the respondent has disallowed the credits so claimed by petitioner.

The contract was in writing, it was executed by the petitioner prior to May 1, 1936, and it did expressly deal with the payment of dividends, but, says the respondent, it does not meet the test of the statute. He claims (1), citing *Metal Specialty Co.*, 43 B. T. A. 891; *Thibaut & Walker Co.*, 42 B. T. A. 29; *Henry Mill & Timber Co.*, 43 B. T. A. 1073; and *Lehigh Structural Steel Co.*, 44 B. T. A. 422, that this contract is between petitioner, its officers, and stockholders, whereas the statute contemplates a contract between the corporation and its creditors; (2) that the contract did not bar the payment of dividends to Sperry, who under the agreement with the bank was to become a stockholder and did so become a stockholder prior to January 1, 1936; and (3) that even though the contract did bar the payment of cash dividends, it still does not meet the test of the statute in that it did not bar the payment of dividends in forms other than cash.

The first two claims of the respondent are not, in our opinion,

well taken and the cases cited are not controlling. The contract here was not merely an agreement between members of the corporate family, which could have been changed by them at any time, as the respondent contends; its purpose was to establish a needed line of credit with the bank and it was designed to benefit and protect the bank by restricting the distribution of profits so long as the line of credit should be available to the petitioner and so long as the petitioner should be indebted to the bank under the line of credit. The facts show that the line of credit contemplated by the contract was extended by the bank to the petitioner throughout the taxable periods here in question and during those periods the petitioner was indebted to the bank for substantial sums. The written contract was not executed by the bank, it is true, but it was executed by the petitioner as required by the statute and upon advancement of money to petitioner the bank had definite and substantial enforceable rights under the contract. Except to the extent specified in the contract or consented to by the bank, the petitioner could not, without violating the provisions of said contract, have made disbursements in cash or other property to its stockholders or to Sperry as its manager, so as to deplete or diminish the funds or property otherwise available for use in the business.

This leaves for consideration the final contention of the respondent, that the contract did not bar the payment of dividends in forms other than cash. Under section 27 (e) of the Revenue Act of 1936, a dividends paid credit is provided in the case of taxable stock dividends to the extent of the fair market value of the stock distributed. We think it apparent therefore that a contract which bars the payment of dividends in cash or other property but permits the payment of dividends in the form of taxable stock dividends is not such a contract as was contemplated by section 26 (c) (1), *supra.* *Helms Bakeries*, 46 B. T. A. 308. The contract in the instant case specifically restricts withdrawals from corporate funds. The facts surrounding the making of the contract and the entering into of supplemental agreements convince us that the only thought was that except to the extent allowed by the agreement the corporate funds and properties should remain in the corporation and be available for corporate operations and that there was no thought of restricting the payment of dividends in stock, taxable or otherwise. In fact, it was contemplated that stock should be issued under some plan so as to give Sperry a proprietary interest. This was finally worked out by a rearrangement of the stock structure. Prior to the agreement the authorized stock of the corporation was in the form of common stock and was limited to 1,000 shares, all of which was issued and owned by Lillian S. Clark and Grace C. Pyle. As worked

out to meet the desires of the bank, the stock became 1,500 shares of preferred and 200 shares of common. The preferred stock was issued 1,312½ shares to Mrs. Clark and 187½ shares to Mrs. Pyle, while the 200 shares of common stock were issued 85 shares to Mrs. Clark, 15 shares to Mrs. Pyle, and 100 shares to Sperry, and, except for some shifting of the common shares as between Mrs. Clark and Mrs. Pyle on August 20, 1936, the above described distribution of stock continued throughout the year 1936 and the taxable period January 1 to June 30, 1937. We find nothing in the contract of November 18, 1935, nor in the intention of the parties thereto, including the bank, which would have prohibited the payment of stock dividends, taxable or otherwise, during the taxable periods before us, and under such circumstances it can not be said that the petitioner could not have distributed taxable stock dividends during those periods without violating a provision of the said contract. *Helms Bakeries*, *supra.* Compare *United States* v. *Dakota Tractor & Equipment Co.*, 125 Fed. (2d) 20; *Paraport Theatre Leasing Corporation*, 44 B. T. A. 108; and *E. C. Atkins & Co.*, 44 B. T. A. 441. The action of the respondent in disallowing the credits claimed by petitioner is accordingly sustained.

*Decision will be entered under Rule 50.*